## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FILED
U.S. DISTRICT COURT
2015 MAR -2  PM 1: 11
S.D. OF N.Y.W.P.

BLACK DIRT DISTILLING, LLC

a New York Limited Liability Company,

Plaintiff,

**15 CV    1502**

Case No.

v.

Hon.

NETSIRK, LLC

a New York Limited Liability Company

Defendant.

**JURY DEMAND**

---

## COMPLAINT

Plaintiff, Black Dirt Distillery, LLC ("Distillery"), for its complaint against Defendant, Netsirk, LLC ("Netsirk"), alleges as follows:

### PARTIES

1.    Distillery is a corporation organized under the laws of the state of New York having a principal business address at 385 Glenwood Rd., Pine Island, New York

2.    On information and belief, Netsirk is a limited liability company organized under the laws of the State of New York having a

1

principal place of business at 28 North Main Street, Florida, New York 10921.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over Netsirk because Netsirk is a New York Limited Liability Company with a principal place of business in New York, and within this judicial district.

5.     Venue is proper in this Court under 28 U.S.C. § 1391 for at least the reason that Netsirk is a New York Limited Liability Company with a principal place of business in New York, and within this judicial district.

## GENERAL ALLEGATIONS

**DISTILLERY**

### BACKGROUND – THE WARICK VALLEY WINERY

6.      Distillery is related company to the Warwick Valley Wine Co., Inc. ("Warwick").  Distillery and Warwick have common owners and Distillery licenses the BLACK DIRT mark(s) at issue in this case to Warwick.

7.      Warwick is a winery and distillery located at 114 Little York Road, Warwick, NY 10990.

8.      Warwick opened to the public in about 1994 and has been in continuous operation since that time.

9.      Warwick started as a winery in 1994 and has grown and added a range of goods and services over time, including adding a selection of wines, a gin, a hard cider, providing contract distillery services, apple and pear picking, tasting rooms, hosting music festivals, hosting private events, a bakery and a café.

10.     Warwick has provided bakery services to the public since at least 1999.

3

11.   Warwick has operated a café that is open to the public since at least 2004.

12.   Beginning in about May 2014, Warwick began using under license from Distillery the BLACK DIRT mark in conjunction with the serving in the café of grilled food offerings.   Specifically, the new offerings were promoted under the name BLACK DIRT GRILL.   The BLACK DIRT GRILL name was published by Warwick on menus in the café starting in about May 2014.   By December 18, 2014, Warwick had updated its website to promote the BLACK DIRT GRILL.

13.   Since 1994 Warwick has offered to sell, and sold, a number of different wines to the public.  .

14.   Since at least 2000, Warwick has continuously offered for sale and sold in commerce wine under the name BLACK DIRT®.

15.   Since at least 2007 Warwick has promoted a recipe for BLACK DIRT® red sangria on its website.

4

## BLACK DIRT® REGISTRATION

16.    In 2012, Warwick was issued U.S. Registration No. 4264971, directed to use of the mark BLACK DIRT® in connection with wine and bourbon ("the '971 Registration"). The '971 Registration was based on an application filed on July 6, 2010 alleging an intent-to-use the mark in commerce. A copy of the '971 Registration and related assignment information for that Registration is attached as **Exhibit A.**

17.    In 2013, Warwick assigned to Distillery Warwick's rights and priority to the BLACK DIRT mark, including ownership of the '971 Registration.

18.    Warwick, a related and commonly owned company to Distillery, continues to use the BLACK DIRT® mark in commerce under license from, and oversight by, Distillery.

## BACKGROUND – DISTILLERY SPINOFF

19.    The members / owners of Warwick are also the members / owners of Distillery.

20.  Warwick has operated a distillery since at least 2003. Distilled products that Warwick has offered for sale to the public included fruit based products sold under the AMERICAN FRUITS® brand and a gin sold under the Warwick™ brand. The members / owners of Warwick incorporated Plaintiff, Distillery in 2012 in part in response to a change in State law and as part of an effort to expand and focus distillery operations begun by Warwick.

21.  Since opening, Distillery has produced, offered to sell, and sold in commerce a BLACK DIRT® bourbon and a BLACK DIRT brandy. Distillery also offers contract distillery services. Distillary's BLACK DIRT® products are sold in commerce and may be sampled at Warwick's tasting room.

22.  Distillery's BLACK DIRT® mark has earned a valuable public reputation in the public due at least in part to extensive media coverage and advertising of the BLACK DIRT® mark as used by Distillery, the prior use by Warwick, and Warwick's continued authorized use of the BLACK DIRT® mark.

**NETSIRK**

23.    On information and belief, Netsirk is, and at all times relevant to the present action was, doing business as BLACK DIRT BREWHOUSE.  Also on information and belief, Netsirk has been aware of Distillary's use of the BLACK DIRT® mark since at least September 1, 2014.

24.    On information and belief, Netsirk has opened a bar and restaurant operation in the village of Florida, New York, under the name THE BLACK DIRT BREWHOUSE.

25.    On information and belief, since July 15, 2014, Netsirk has operated a page on Facebook posted to the URL https://www.facebook.com/blackdirtbrewhouse.   On information and belief, Netsirk has used its Facebook page to promote the opening of THE BLACK DIRT BREWHOUSE.

26.    On information and belief, on August 14, 2014, Netsirk began promoting on its Facebook page a bourbon drink that Netsirk called the BLACKDIRT Maple Leaf Cocktail.

27.   On information and belief, an image of Netsirk's Facebook post of August 14, 2014 is show below:



28.   On information and belief, Netsirk's BLACKDIRT Maple Leaf Cocktail consists of bourbon shaken up with Maple Syrup, a splash of lemon juice, and a splash of orange.

29.   On information and belief, on August 18, 2014, Netsirk began promoting on its Facebook page a red wine sangria drink.

30.    On information and belief, an image of Netsirk's Facebook post of August 18, 2014 is show below:



31.    On information and belief, on August 19, 2014, Netsirk began promoting on its Facebook page a gin drink.

32.    On information and belief, an image of Netsirk's Facebook post of August 19, 2014 is show below:



33.    On information and belief, on August 26, 2014, Netsirk began promoting on its Facebook page a cocktail drink that Netsirk called BLACKDIRT Manhattan.   Also on information and belief, a Manhattan cocktail includes at least whiskey, sweet vermouth, and bitters.

34.  On information and belief, an image of Netsirk's Facebook post of August 26, 2014 is show below:



35.  On information and belief, on November 11, 2014, Netsirk began promoting tee-shirts on its Facebook page bearing a BLACK DIRT BREWHOUSE logo.

36.   On information and belief, an image of Netsirk's Facebook post of November 11, 2014 is show below:



37.   On information and belief, Netsirk business includes the sale in interstate commerce of tee shirts, and the promotion of alcoholic drinks and bar services to the general public.

38.   On information and belief, on January 6, 2015, Netsirk began promoting food service on the Facebook page.

39.   On information and belief, Netsirk opened its BLACK DIRT BREWHOUSE to the public on February 1, 2015.  An image of Netsirk's Facebook post of February 1, 2015 is show below:



13

40.    Distillery has received at least two unsolicited inquiries from members of the public asking if Netsirk's BLACK DIRT BREWHOUSE operation is related to Distillery's BLACK DIRT mark.

41.    On information and belief, Netsirk, Distillery and Warwick are all physically located within 10 miles of each other.   Also on information and belief, Netsirk is promoting or using Distillery's BLACK DIRT® mark in connection with goods and services that are identical or related to goods and services provided or authorized by Distillery in connection with Distillery's BLACK DIRT® mark, or that are within the zone of natural business expansion of the goods and services provided or authorized by Distillery in connection with Distillery's BLACK DIRT mark.

## COUNT I
### Violation of the Lanham Act – False Designation of Origin
### (15 U.S.C. § 1125)

42.    Distillery repeats and incorporates by reference the allegations contained in paragraphs 1 - 41 of the Complaint as though fully set forth herein.

43.    Despite Distillery's prior rights in the BLACK DIRT mark, Netsirk has knowingly used in commerce Distillery's BLACK DIRT

mark, or copies, reproductions, or colorable imitations thereof, in connection with the products and services that Netsirk advertises, promotes, and sells. Netsirk actions render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

44. Netsirk's misappropriation of Distillery's BLACK DIRT mark, or copies, reproductions, or colorable imitations thereof, alleged above is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Netsirk's products and services, and is likely to cause such people to believe in error that Netsirk's products and services have been authorized, sponsored, approved, endorsed, or licensed by Distillery or that Distillery is in some way affiliated with Netsirk.

45. Netsirk's acts constitute false designations of the origin and/or sponsorship of Netsirk's products and services in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

46. By reason of Netsirk's actions, Distillery has suffered irreparable harm to Distillery's valuable BLACK DIRT mark. Unless Netsirk is restrained from its actions, Distillery will continue to be irreparably harmed.

47.   Distillery has no remedy at law that will compensate for the continued and irreparable harm that will be caused if Netsirk's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

48.   As a direct and proximate result of Netsirk's conduct, Distillery is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, and a disgorgement of all revenues and/or profits wrongfully derived by Netsirk from its infringement of the Distillery's BLACK DIRT mark pursuant to 15 U.S.C. § 1117.

## COUNT II
## Violation of the Lanham Act – Infringement Of Registered Mark
## (15 U.S.C. § 1114)

49.   Distillery repeats and incorporates by reference the allegations contained in paragraphs 1 - 48 of the Complaint as though fully set forth herein.

50.   The mark of the '971 Registration is inherently distinctive, arbitrary and fanciful, or has acquired secondary meaning. The public associates the BLACK DIRT® mark of the '971 Registration with Distillery and Distillery's products and services, and those authorized

products and services offered by Warwick. This is a result of the inherent distinctiveness of the BLACK DIRT® mark, and of distinctiveness acquired through extensive advertising, sales, and use in commerce throughout New York and the United States in connection with goods and services bearing or using the BLACK DIRT® mark.

51.  Despite Distillery's prior rights in the BLACK DIRT® mark of the '971 Registration, Netsirk has used, and with knowledge of Distillery's rights continues to use in commerce, without Distillery's authorization, the BLACK DIRT® mark of the '971 Registration, or copies, reproductions, or colorable imitations thereof, in connection with the advertisement, promotion, and sale of Netsirk's products and services.

52.  Netsirk's use of a confusingly similar imitation of Distillery's BLACK DIRT® mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Netsirk's goods are manufactured or distributed, and services are rendered, by Distillery, or are associated or connected with Distillery, or have the sponsorship, endorsement, or approval of Distillery. Netsirk's actions constitute willful infringement of Distillery's exclusive rights in the

17

BLACK DIRT® mark of the '971 Registration in violation of 15 U.S.C. § 1114.

53.    Netsirk's   misappropriation   of   the   mark   of   the   '971 Registration, or copies, reproductions, or colorable imitations thereof, has been, and continues to be done, with the intent to cause, and is likely to cause, confusion, mistake, and to deceive consumers concerning the   source   and/or   sponsorship   of   Netsirk's   products   and   services. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

54.    As   a   direct   and   proximate   result   of   Netsirk's   conduct, Distillery has suffered irreparable harm to the valuable BLACK DIRT® mark of the '971 Registration. Unless Netsirk is restrained from further infringement of those marks, Distillery will continue to be irreparably harmed.

55.    Distillery has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Netsirk's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

56.    As a direct and proximate result of Netsirk's conduct, Distillery is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, and a disgorgement, of all revenues and/or profits wrongfully derived by Netsirk from its infringement of the BLACK DIRT® mark of the '971 Registration pursuant to 15 U.S.C. § 1117.

## COUNT III
## Common Law Unfair Competition

57.    Distillery repeats and incorporates by reference the allegations contained in paragraphs 1 - 56 of the Complaint as though fully set forth herein.

58.    Netsirk's marketing, promotion, offering for sale, and sale of services under the Distillery Marks, or copies, reproductions, or colorable imitations thereof, constitute false designations of origin and false descriptions or representations that Netsirk services and/or products originate from, or are offered, sponsored, authorized, licensed

19

by, or otherwise somehow connected with Distillery, when in fact they are not. As a result of Netsirk's conduct, the public is likely to believe that Netsirk's goods and/or services have originated from and/or have been approved by Distillery.

59.   Netsirk unauthorized use of the Distillery Marks, or copies, reproductions, or colorable imitations thereof, falsely represents that Netsirk's goods and/or services emanate from or are authorized by Distillery and places beyond Distillery's control the quality of such services and products, and the message that is associated with such products and services.

60.   Netsirk's conduct is willful, intended to reap the benefit of the goodwill associated with the Distillery Marks, has caused and continues to cause damage and injury to Distillery, and constitutes common law unfair competition.

**COUNT IV**
**Common Law Infringement**

61.   Distillery repeats and incorporates by reference the allegations contained in paragraphs 1- 60 of the Complaint as though fully set forth herein.

62.   Distillery has common law rights in the BLACK DIRT mark based at least upon on its continuous use of the BLACK DIRT mark in the State of New York in connection with the offering and sale, directly or through others, of a BLACK DIRT® Bourbon, BLACK DIRT Brandy, BLACK DIRT wine, BLACK DIRT contract distilling services, promotion of BLACK DIRT grill services.

63.   Netsirk's unauthorized use of the Distillery's BLACK DIRT mark, or copies, reproductions, or colorable imitations thereof to promote, advertise, market, and/or sell its goods and/or service is likely to cause confusion, mistake, and deception of the public as to the identity and origin of Netsirk's goods/or services, or as to a connection or affiliation with Distillery, or permission from Distillery, that does not exist, causing irreparable harm to Distillery for which there is no adequate remedy at law.   Netsirk's conduct thus constitutes common law infringement of Distillery's BLACK DIRT mark.

64.   Despite Distillery's prior rights in the BLACK DIRT mark, and despite Netsirk's actual and constructive knowledge of Distillery's ownership and prior use of Distillery's BLACK DIRT mark, Netsirk has continued to use the BLACK DIRT mark, or copies, reproductions, or

21

colorable imitations thereof, without Distillery's authorization or consent. Netsirk's actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Distillery in the BLACK DIRT mark.

65.   Distillery has sustained injury, damage, and loss based on Netsirk's actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Distillery respectfully requests judgment against Netsirk as follows:

1. That a preliminary and permanent injunction be issued enjoining Netsirk, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Netsirk, and all those in active concert or participation with Netsirk who receives notice directly or otherwise of such injunction from:

a) using any Distillery's BLACK DIRT mark, or any other marks that are confusingly similar to Distillery's BLACK DIRT mark, for products or services, or making any other unlawful use of the Distillery's BLACK DIRT mark or any other marks owned by Distillery, and including any use of the BLACK DIRT mark in connection with any goods or services that are within the zone of natural business expansion of the goods and services of Distillery;

b) using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or public to believe that any product manufactured, imported, distributed, offered for sale, or sold by Netsirk or any service offered by Netsirk is in any manner associated or connected with Distillery, or is licensed, sponsored, approved, or authorized by Distillery;

c) engaging in any other activity constituting unfair competition with Distillery, or constituting infringement of the Distillery's BLACK DIRT mark, including any use of the BLACK DIRT mark in connection with any goods or services that are within the zone of natural business expansion of the goods and services of Distillery;

d)      taking any action, including the unauthorized use of Distillery's BLACK DIRT mark, that dilutes the unique association between the BLACK DIRT mark and Distillery, or that tarnishes the reputation or image of Distillery;

e) disposing of, destroying, altering, moving, removing, concealing, tampering with, or in any manner secreting any business records (including computer records) of any kind, including invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to any products or services offered in connection with the Distillery Marks, or any mark or designation that is confusingly similar to Distillery's BLACK DIRT mark;

f)      instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

2.      Awarding Distillery its actual damages, including but not limited to disgorgement of Netsirk's profits, and trebled pursuant to 15 U.S.C. § 1117(a) & (b), arising out of Netsirk's acts of willful infringement.

3.     Awarding Distillery its actual damages, including but not limited to disgorgement of Netsirk's profits, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Netsirk's acts of willful unfair competition.

4.     Awarding to Distillery interest, including pre-judgment interest, on the foregoing sums.

5.     Awarding Distillery its costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a) and (b).

6.     Awarding Distillery exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate.

7.     Directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods or services offered, advertised, or promoted by or on behalf of Netsirk are authorized by Distillery or related in any way to Distillery's products or services.

8.     Directing that Netsirk file with the Court and serve upon Distillery's counsel within thirty (30) days after entry of judgment a

report in writing under oath setting forth in detail the manner and form in which Netsirk has complied with the above.

9.    Awarding Distillery such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Distillery respectfully requests a jury trial of all issues so triable.

Respectfully submitted,

By:_____

Jeffrey A. Lindenbaum (JL-1971)
Collen IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York 10562
Tel.: (914) 941-5668
Fax: (914)941-6091
jlindenbaum@collenip.com

Mark D. Schneider
GIFFORD, KRASS, SPRINKLE,
ANDERSON & CITKOWSKI, P.C.
2701 Troy Center Drive, Suite 330
P.O. Box 7021
Troy, Michigan  48007-7021
(248)647-6000
(248)647-5210 (Fax)
litigation@patlaw.com

*Attorneys for Plaintiff*

Dated:  March 2, 2015

# EXHIBIT A

# EXHIBIT A

# United States of America

### United States Patent and Trademark Office

# BLACK DIRT

**Reg. No. 4,264,971**

**Registered Dec. 25, 2012**

**Int. Cl.: 33**

**TRADEMARK**

**PRINCIPAL REGISTER**

WARWICK VALLEY WINE COMPANY, INC. (NEW YORK CORPORATION)
114 LITTLE YORK ROAD
WARWICK, NY 10990

FOR: BOURBON; WINE, IN CLASS 33 (U.S. CLS. 47 AND 49).

FIRST USE 9-7-2012; IN COMMERCE 9-7-2012.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 85-078,470, FILED 7-6-2010.

GINA HAYES, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

**Generated on:** This page was generated by TSDR on 2015-01-06 11:04:00 EST
**Mark:** BLACK DIRT

# BLACK DIRT

| | | | |
|---|---|---|---|
| **US Serial Number:** 85078470 | | **Application Filing Date:** Jul. 06, 2010 | |
| **US Registration Number:** 4264971 | | **Registration Date:** Dec. 25, 2012 | |
| **Filed as TEAS Plus:** Yes | | **Currently TEAS Plus:** Yes | |
| **Register:** Principal | | | |
| **Mark Type:** Trademark | | | |
| **Status:** Registered. The registration date is used to determine when post-registration maintenance documents are due. | | | |
| **Status Date:** Dec. 25, 2012 | | | |
| **Publication Date:** Dec. 07, 2010 | | **Notice of Allowance Date:** Feb. 01, 2011 | |

## Mark Information

**Mark Literal Elements:** BLACK DIRT

**Standard Character Claim:** Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark Drawing Type:** 4 - STANDARD CHARACTER MARK

## Goods and Services

**Note:** The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Bourbon; Wine

**International Class(es):** 033 - Primary Class       **U.S Class(es):** 047, 049

**Class Status:** ACTIVE

**Basis:** 1(a)

**First Use:** Sep. 07, 2012       **Use in Commerce:** Sep. 07, 2012

## Basis Information (Case Level)

| | | |
|---|---|---|
| **Filed Use:** No | **Currently Use:** Yes | **Amended Use:** No |
| **Filed ITU:** Yes | **Currently ITU:** No | **Amended ITU:** No |
| **Filed 44D:** No | **Currently 44D:** No | **Amended 44D:** No |
| **Filed 44E:** No | **Currently 44E:** No | **Amended 44E:** No |
| **Filed 66A:** No | **Currently 66A:** No | |
| **Filed No Basis:** No | **Currently No Basis:** No | |

## Current Owner(s) Information

**Owner Name:** BLACK DIRT DISTILLING, LLC

**Owner Address:** 114 LITTLE YORK ROAD
WARWICK, NEW YORK 10990
UNITED STATES

**Legal Entity Type:** LIMITED LIABILITY COMPANY       **State or Country Where Organized:** NEW YORK

## Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** Mark D. Schneider       **Docket Number:** WVW-10419/38

**Attorney Primary Email Address:** docket@patlaw.com       **Attorney Email Authorized:** No

### Correspondent

**Correspondent Name/Address:** MARK D. SCHNEIDER
GIFFORD, KRASS, SPRINKLE, ANDERSON & CITKOWSKI, P.

PO BOX 7021
TROY, MICHIGAN 48007-7021
UNITED STATES

**Phone:** 248-647-6000         **Fax:** 248-647-5210

**Correspondent e-mail:** docket@patlaw.com     **Correspondent e-mail** Yes
                                    **Authorized:**

Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Mar. 06, 2013 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Dec. 25, 2012 | REGISTERED-PRINCIPAL REGISTER | |
| Nov. 21, 2012 | NOTICE OF ACCEPTANCE OF STATEMENT OF USE E-MAILED | |
| Nov. 20, 2012 | LAW OFFICE REGISTRATION REVIEW COMPLETED | 77312 |
| Nov. 20, 2012 | ALLOWED PRINCIPAL REGISTER - SOU ACCEPTED | |
| Nov. 08, 2012 | STATEMENT OF USE PROCESSING COMPLETE | 71034 |
| Oct. 26, 2012 | USE AMENDMENT FILED | 71034 |
| Oct. 26, 2012 | TEAS STATEMENT OF USE RECEIVED | |
| Aug. 14, 2012 | NOTICE OF APPROVAL OF EXTENSION REQUEST E-MAILED | |
| Aug. 13, 2012 | EXTENSION 3 GRANTED | 71034 |
| Jul. 31, 2012 | EXTENSION 3 FILED | 71034 |
| Jul. 31, 2012 | TEAS EXTENSION RECEIVED | |
| Mar. 01, 2012 | NOTICE OF APPROVAL OF EXTENSION REQUEST E-MAILED | |
| Feb. 29, 2012 | EXTENSION 2 GRANTED | 71034 |
| Feb. 01, 2012 | EXTENSION 2 FILED | 71034 |
| Feb. 29, 2012 | CASE ASSIGNED TO INTENT TO USE PARALEGAL | 71034 |
| Feb. 01, 2012 | TEAS EXTENSION RECEIVED | |
| Aug. 02, 2011 | NOTICE OF APPROVAL OF EXTENSION REQUEST E-MAILED | |
| Jul. 29, 2011 | EXTENSION 1 GRANTED | 98765 |
| Jul. 29, 2011 | EXTENSION 1 FILED | 98765 |
| Jul. 29, 2011 | TEAS EXTENSION RECEIVED | |
| Feb. 01, 2011 | NOA E-MAILED - SOU REQUIRED FROM APPLICANT | |
| Dec. 07, 2010 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Dec. 07, 2010 | PUBLISHED FOR OPPOSITION | |
| Nov. 01, 2010 | LAW OFFICE PUBLICATION REVIEW COMPLETED | 77312 |
| Nov. 01, 2010 | ASSIGNED TO LIE | 77312 |
| Oct. 18, 2010 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Oct. 18, 2010 | ASSIGNED TO EXAMINER | 76734 |
| Jul. 09, 2010 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Jul. 09, 2010 | NEW APPLICATION ENTERED IN TRAM | |

## TM Staff and Location Information

TM Staff Information - None
File Location

**Current Location:** PUBLICATION AND ISSUE SECTION     **Date in Location:** Nov. 20, 2012

## Assignment Abstract Of Title Information

Summary

**Total Assignments:** 1        **Registrant:** Warwick Valley Wine Company, Inc.

**Assignment 1 of 1**

**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Reel/Frame:** 4966/0800                                            **Pages:** 3

**Date Recorded:** Feb. 13, 2013

**Supporting Documents:** assignment-tm-4966-0800.pdf

| Assignor | |
|---|---|
| **Name:** WARWICK VALLEY WINE COMPANY, INC. | **Execution Date:** Feb. 11, 2013 |
| **Legal Entity Type:** CORPORATION | **State or Country Where Organized:** NEW YORK |

| Assignee | |
|---|---|
| **Name:** BLACK DIRT DISTILLING, LLC | |
| **Legal Entity Type:** LIMITED LIABILITY COMPANY | **State or Country Where Organized:** NEW YORK |
| **Address:** 114 LITTLE YORK ROAD WARWICK, NEW YORK 10990 | |

| Correspondent |
|---|
| **Correspondent Name:** MARK D. SCHNEIDER |
| **Correspondent Address:** P. O. BOX 7021 TROY, MI 48007 |

**Domestic Representative - Not Found**